UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DECKERS OUTDOOR CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1698** |
| **OWNER OF AHNU.COM** | **SECTION "L" (4)** |

**ORDER & REASONS**

Before the Court is Plaintiff Deckers Outdoor Corporation's Motion Entry of Final Default. R. Doc. 14. Defendant, owner of the web domain "ahnu.com," has not responded to the motion or otherwise appeared in the suit. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I.      BACKGROUND

Plaintiff brought this trademark infringement action against Defendant, unknown owner of the web domain "ahnu.com." R. Doc. 1. Plaintiff is a footwear company, and one of its product lines is the "AHNU" sneaker brand. *Id.* at 2. Plaintiff alleges that it began selling AHNU footwear in 2007 and trademarked the brand on February 26, 2008. *Id.* at 3. Plaintiff maintains that it has spent millions of dollars a year in advertising that features the AHNU trademark. *Id.* From April 17, 2005 through April of 2021, Plaintiff controlled the web domain name "ahnu.com" and used the domain to promote and sell its AHNU products. *Id.* at 4. However, Plaintiff alleges that in April of 2021, it inadvertently did not renew its registration of the domain name. *Id.* Thereafter, on June 8, 2021, Defendant registered the domain name. *Id.* Plaintiff alleges that Defendant has not demonstrated the use of the domain name in connection with any offering of goods or services. *Id.* at 5. Rather, it alleges that the domain name "redirects to a TopDot website where it is offered for sale for the minimal amount of $10,000 USD." *Id.* Overall, Plaintiff argues that Defendant is using the domain name to capitalize on the reputation of Plaintiff's AHNU trademark. *Id.*

1

Plaintiff brings three claims: (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) false designation of origin in violation of 15 U.S.C. § 1125(a), and (3) "cyberpiracy" in violation of 15 U.S.C. § 1125(d). *Id.* at 5-7. Plaintiff seeks a permanent injunction preventing Defendant from infringing its trademark, using the domain name, or associating itself with Plaintiff's brand. *Id.* at 7-8. Further, Plaintiff seeks an order requiring Defendant and/or third-party domain name registrars to transfer and re-register the domain name to Plaintiff. *Id.* at 9. Finally, Plaintiff seeks either treble damages or statutory damages of (1) $2,000,000 for Defendant's use of the AHNU trademark, and (2) $100,000 for its use of the infringing domain name. *Id.* at 9-10.

Defendant's identity is unknown. Plaintiff only has the information Defendant input when Defendant registered the domain name, which consists of an email address (dnamemanager@gmail.com) and a physical address (1600 Avenida Nereu Ramos, Sombrio, Brazil, 88960). *Id.* at 3. Plaintiff investigated the physical address and determined that it is a parking lot in Brazil. R. Doc. 4-2.

Plaintiff alleges that Defendant registered the infringing domain name with a "domain registrar," Sea Wasp, LLC, which has its principal office in Metairie, Louisiana. R. Doc. 1 at 1. Plaintiff avers that Defendant entered into a Registration Agreement with Sea Wasp when Defendant registered the domain name. It avers that this Registration Agreement incorporates the Uniform Domain Name Dispute Resolution Policy ("UDNDRP"). *Id.* at 2. Pursuant to the UDNDRP, Plaintiff first brought the instant suit before an arbitration panel appointed by the "WIPO Arbitration and Mediation Center." *Id.* at 1. Defendant did not appear in the arbitration proceeding. On June 14, 2024, in a non-binding proceeding, the arbitration panel issued a written administrative opinion that declined to transfer the "ahnu.com" domain name from Defendant to Plaintiff. *Id.* Plaintiff maintains that the UDNDRP provides that after an adverse decision in

arbitration, a party may bring a lawsuit regarding a domain name in a court with jurisdiction over the location of the registrar. Because Sea Wasp is located in Metairie, Louisiana, within the jurisdiction of this Court, Plaintiff avers that jurisdiction is proper. *Id.*

On July 26, 2024, Plaintiff filed a motion requesting that the Court allow it to serve Defendant by email pursuant to Federal Rule of Civil Procedure 4(f)(3). R. Doc. 4. It maintained that Defendant's physical location is unknown, as the only address Defendant provided when it registered the domain name is a parking lot. *Id.* at 2. It contended that service to the email address Defendant provided when it registered the domain name was the only viable way to reach Defendant. *Id.* at 3. The Court granted the motion, finding that service by email was appropriate and reasonably calculated to reach Defendant. R. Doc. 5

Plaintiff accordingly served copies of the summons and complaint by email. R. Docs. 9, 11. Defendant did not answer or otherwise appear in the suit. On September 25, 2024, Plaintiff requested preliminary default, which the Clerk of Court granted. R. Docs. 12, 13.

## II. PRESENT MOTION

Plaintiff requests that the Court grant it a final default judgment. R. Doc. 14. It argues that Defendant was properly served and that its time to answer lapsed. *Id.* at 1. Plaintiff repeats the allegations made in the complaint, giving the relevant statutory provisions of the three claims it brings. R. Doc. 14-1 at 5-13. Plaintiff also requests various categories of relief including injunctive relief, damages, and attorney's fees. *Id.* at 12-15.

The Court has located and read the arbitration opinion issued in this case. The Court acknowledges that the arbitration panel ruled against Plaintiff, declining to transfer the domain name to Plaintiff pursuant to the UDNDRP. *See Deckers Outdoor Corporation v. Doman Manager*, No. D2024-1282 (World Intellectual Property Organization Arbitration and Mediation Center, June 24, 2024) (Nick Gardner). However, this arbitration opinion is not particularly helpful for three reasons.

3

First, this opinion is not binding on the Court in the instant case, nor does it receive any deference. *See Deep Vision Architects, LLC v. Virtuoso, Ltd.*, No. 22-01046, 2023 WL 11959776, at *2 (N.D. Tex. Sept. 1, 2023) ("The analysis and conclusions laid out by the WIPO decision are entitled to no deference by this Court."). Second, the arbitration panel was not deciding whether Defendant violated United States trademark law. Rather, it was deciding whether Plaintiff was entitled to a transfer of the domain name pursuant to the UDNDRP itself. Third, and most fundamentally, the arbitration panel does not appear to have been bound—as this Court is in the instant default judgment context—to accept as true all of Plaintiff's well-pleaded allegations of fact. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Thus, its decision is based on a fundamentally different legal standard than the instant case presents.

### III. LAW AND ANALYSIS

"The Fifth Circuit follows a three-part analysis to assess the suitability of a default judgment: 1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Viahart, LLC v. Does 1-54*, No. 18-604, 2021 WL 777083, at *2 (E.D. Tex. Jan. 29, 2021), *aff'd sub nom*. No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022). Accordingly, the Court takes these issues in turn.

#### A. Default Judgment is Procedurally Proper.

First, to obtain a default judgment, a Plaintiff must make a *prima facie* showing that the Court has personal jurisdiction and subject matter jurisdiction. *See Viahart, LLC v. Does 1-54*, No. 18-604 2021 WL 777083, at *3 (E.D. Tex. Jan. 29, 2021). As to personal jurisdiction, Plaintiff has alleged that when Defendant registered the domain name, Defendant signed a Registration Agreement which provided that suits regarding the domain name could be brought in a court with jurisdiction over the location of the registrar, that is, Metairie, Louisiana. R. Doc. 1 at 2. "Because the

requirement of personal jurisdiction is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001). Here, Defendant consented to the personal jurisdiction of courts with jurisdiction over Metairie Louisiana when it signed the Registration Agreement. Accordingly, the Court finds that Plaintiff has made a *prima facie* showing that Defendant submitted to the personal jurisdiction of this Court. *Id.* at 1. As to subject matter jurisdiction, all of Plaintiff's claims arise under federal law and are therefore properly brought in this Court. *See* 28 U.S.C. § 1331.

Second, a Plaintiff must show that the case has followed the correct process to obtain a default judgment. If a party fails to plead or otherwise defend after being properly served, the serving party is entitled to entry of a default by the Clerk of the Court. Fed. R. Civ. P. 55(a). Following entry of the Clerk's default, the Court may enter a final default judgment. Fed. R. Civ. P. 55(b). Here, Defendant was properly served by Court Order. R. Docs. 5, 9. A preliminary order of default has been entered. R. Doc. 13. Accordingly, the case is procedurally prepared for an order of final default.

Finally, the Court must determine whether a default judgment is procedurally warranted. The Fifth Circuit considers six factors in determining whether a default judgment is procedurally necessary:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, these factors support entry of a default judgment against Defendant. First, there are presently no material issues of fact because Defendant has not appeared or answered, meaning that the Court accepts Plaintiff's allegations as true. *See Nishimatsu*, 515 F.2d at 1206. Second, Plaintiff has been prejudiced by Defendant's failure

5

to appear because it needs to resolve the instant suit to protect its interest in its trademark. R. Doc. 1 at 3. Third, Defendant's failure to answer or appear establishes grounds for default. Fourth, Defendant seems to have been in bad faith because it registered the domain name with the address of a parking lot in Brazil. R. Doc. 4-2 at 2. Fifth, the Court will tailor an appropriate remedy and damage award for Plaintiff's claim so that the default judgment is not excessively harsh. Sixth, there is presently no basis to expect that a default judgment will need to be set aside. Should Defendant later appear and challenge the default, the Court will assess the matter at that time. Accordingly, the Court finds that Plaintiff has demonstrated that a default judgment is procedurally warranted.

    **B. Plaintiff has Pled Sufficient Facts to Show Entitlement to Default.**

"[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206. When considering the motion for default judgment, the court should accept as true all well-pleaded allegations of fact in the complaint. *Id.*; *Wooten v. McDonald Transit Assocs, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (holding that a defendant does not admit facts that are not well-pleaded or to admit conclusions of law). To state a plausible claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and include facts that "raise a right to relief above the speculative level" and into the "realm of plausible liability." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 n.5 (2007). Plaintiff seeks default on each of its three claims: trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), and "cyberpiracy" in violation of 15 U.S.C. § 1125(d). R. Doc. 1 at 5-7. The Court takes each in turn.

    **i. Trademark Infringement and False Designation of Origin**

Plaintiff brings two claims under the Lanham Act: false designation of origin and trademark infringement. To succeed on a claim for trademark infringement, a plaintiff must prove two

elements: "(1) it possesses a legally protectable trademark and (2) [defendant's] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). The test for a successful claim of false designation of origin is essentially identical to this second element: the plaintiff must show that the "public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

Here, Plaintiff's claims meet both elements and thus states a valid claim as to both false designation of origin and trademark infringement. First, Plaintiff has alleged that it owns the "AHNU" trademark. R. Doc. 1 at 3. It also provided a copy of a Registration Certificate for its "AHNU" trademark issued by the United States Patent and Trademark Office ("PTO"). R. Doc. 1-1 at 1. "Registration of a mark with the PTO constitutes *prima facie* evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010). Accordingly, the Court finds that Plaintiff has sufficiently alleged that it possessed a legally protectible trademark.

Second, the Court finds that Plaintiff has sufficiently alleged a likelihood of customer confusion. Plaintiff avers that "the similarity in spelling and overall look of the marks has created and is still creating a likelihood of confusion, mistake, and deception among the general public." R. Doc. 1 at 6. Further, "federal courts routinely recognize that domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion." *Real Est. Edge, LLC v. Campbell*, No. 17-1093, 2019 WL 830966, at *3 (W.D. Tex. Feb. 21, 2019). For example, in *Buy.com, Inc. v. Think Tank Grp., LLC*, the court held that the plaintiff, who had trademarked "buy.com," was entitled to a default judgment on trademark infringement claims against a defendant who registered domain names such as "buycome.co," and "bycom.me." No. 12-3, 2012 WL 13020049, at *1 (C.D. Cal. Aug. 27, 2012). The plaintiff alleged that the defendant was attempting to

sell the domain names themselves. *Id.* The court found that these allegations satisfied the customer-confusion element. *Id.*

Here, the domain name "ahnu.com" is identical to Plaintiff's "AHNU" trademark except that it adds the common ".com" ending. In fact, it seems logical that a customer looking to purchase "AHNU" footwear online would indeed search for "ahnu.com." And, the customer would likely be confused when they found nothing but a website offering the domain name itself for sale. *See id.* As Plaintiff argues, "when customers visit the ahnu.com site and are redirected to the domain sale site, they are likely to conclude that the AHNU brand is discontinued or defunct." R. Doc. 14-2 at 12. Thus, the Court finds that Plaintiff has sufficiently plead the customer confusion element and that a factual basis exists to support its claims for trademark infringement and false designation of origin.

**ii. Cyberpiracy**

Plaintiff also brings a claim pursuant to the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). "The elements for a claim under the ACPA are: (1) the mark is famous or distinctive; (2) the domain name is 'identical or confusingly similar' to the mark; and (3) the individual registering for the domain name had a bad faith intent to profit from the domain name. *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751, at *13 (E.D. Tex. Jan. 8, 2016) (citing 15 U.S.C. § 1125(d)(1)(A)). As relevant to this suit, factors to consider in making a determination of bad faith include (1) the defendant's "intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark" (2) the defendant's "offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services," and (3) "the person's provision of material and misleading false contact information when applying for the registration of the domain name." *Id.* § 1125(d)(1)(B).

As to the first element, the Court has already found that Plaintiff adequately alleges that it owns the AHNU trademark. Plaintiff also alleges that its mark was "distinctive" at the time of defendant's registration of the domain name because "AHNU products have been continuously sold since as early as 2007" and "the AHNU trademark is well-known among U.S. consumers." R. Doc. 1 at 3. Accordingly, the Court finds that Plaintiff has plead the first element. As to the second element, whether the domain name is "identical or confusingly similar" to the trademark, this element is met for the reasons stated above regarding the customer-confusion element of trademark infringement and false designation of origin claims.

Regarding the third element, Plaintiff claims that Defendant "acted with bad faith." *Id.* at 7. In support of this allegation, Plaintiff claims that Defendant is "well aware of the fame of the AHNU Trademark" and that it "registered and is using the Infringing Domain Name with the purpose of capitalizing on the reputation of [Plaintiff's] AHNU trademark." *Id.* at 5. Regarding the bad-faith factors listed in the statute, Plaintiff alleges that Defendant is not using the domain name "in connection with a bona fide offering of goods or services" but is rather trying to sell the name to third parties such as Plaintiff for $10,000. *Id.* Finally, Plaintiff claims that Defendant registered the domain name using a false address which is actually a parking lot in Brazil. R. Doc. 4-2. Overall, the Court finds that Plaintiff has adequately plead that Defendant acted in bad faith pursuant to the factors enumerated in 15 U.S.C. § 1125(d)(1)(B).

### C. Plaintiff is Entitled to Relief.

On a motion for a default judgment, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Rather than merely accepting a plaintiff's allegations regarding damages, "[i]t is the Court's task to fix the amount of damages" on a default judgment. *Wright v. E-Sys., LLC*,

No. 12-4715, 2016 WL 7802996, at *2 (N.D. Tex. Dec. 20, 2016). Here, Plaintiff requests a variety of damages. The Court takes each category turn.

### i. Plaintiff is Entitled to an Injunction Against Further Trademark Infringement.

Plaintiff requests that the Court enjoin Defendant from further infringing on its trademark.[1] R. Doc. 14 at 3. This is an available remedy in a trademark infringement case where the defendant has defaulted. 15 U.S.C. § 1116; *See Viahart*, 2021 WL 777083, at *10. To enter a permanent injunction, a court must first determine whether the plaintiff has satisfied a four-factor test:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, Plaintiff has satisfied these four factors. The first two factors can be established where a Plaintiff shows a likelihood of customer confusion. *See S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013) ("In trademark infringement cases, courts often assess irreparable injury by looking at the likelihood of confusion and whether the plaintiff suffered a loss of control."); *Viahart*, 2021 WL 777083, at *11

---

[1] Specifically, Plaintiff requests that Defendant be enjoined from:
 a. using Deckers' AHNU Trademark or any reproductions, counterfeit copy or colorable imitation thereof in connection with the distribution, advertising, offering, or sale of any product that is not a genuine Deckers' AHNU branded product or not authorized by Deckers to be sold in connection with Deckers' AHNU Trademark;
 b. passing off, inducing, or enabling others to sell or pass off any product as a genuine AHNU Product or any other product produced by Deckers, that are not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' AHNU Trademark;
 c. committing any acts calculated to cause consumers to believe that Defendant's actions are done under the authorization, control or supervision of Deckers, or sponsored or approved by, or connected with Deckers;
 d. further infringing Deckers' AHNU Trademark and damaging Deckers' goodwill;
 e. otherwise competing unfairly with Deckers in any manner;
 f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers' AHNU Trademark or any reproductions, counterfeit copy or colorable imitation thereof;
 g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Name or any other domain name that is being used to infringe the AHNU brand; and
 h. operating and/or hosting the website at the Infringing Domain Name and any other domain names registered or operated by Defendant that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' AHNU Product or not authorized by Deckers to be sold in connection with Deckers' AHNU Trademark.

(holding that likely customer confusion suggested that monetary damages are insufficient in trademark infringement cases.) Here, the Court has already explained that customers are likely to be confused by their inability to find "AHNU" footwear at "ahnu.com." Accordingly, the first two factors are met in this trademark infringement case. As to the third factor, the balance of hardships, Defendant will not be unfairly burdened by an injunction preventing it from infringing on Plaintiff's trademark. Finally, regarding the fourth factor, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 4016110, at *17 (E.D. Tex. July 16, 2020) Accordingly, the Court will enter the preliminary injunction that Plaintiff requests.

Plaintiff also requests that the Court require Defendant to produce a report detailing their compliance with the injunction. R. Doc. 14 at 3. Although it seems unlikely that Defendant will respond to the judgment or furnish the report, the Court finds that Plaintiff's request is reasonable and should be granted.

      **ii.**      **Plaintiff is Entitled to a Transfer of the Domain Name.**

Plaintiff requests that the Court enter an order (1) requiring the transfer of the domain name to Plaintiff (2) instructing third parties, such as domain name registrars and registries, to unlock the domain name and transfer it to Plaintiff and (3) directing that, upon Plaintiff's request, "those in privity with Defendant and those with notice of the injunction, including any online marketplace, Internet search engines, Web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites and accounts through which Defendant engages in infringement of the AHNU Trademark." R. Doc. 14 at 4.

The Court finds that Plaintiff is entitled to the first two items of relief. The Anti-Cybersquatting Consumer Protection Act specifically provides that a plaintiff prevailing on a

11

cyberpiracy claim is entitled to a transfer of the infringing domain name. 15 U.S.C. § 1125(d)(1)(B) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."). Further, the Court finds that an order directing the domain name registrars and registries to effectuate the transfer of the domain name to Plaintiff is necessary. *See Gucci Am., Inc. v. Wang Huoqing*, No. 09-5969, 2011 WL 31191, at *15 (N.D. Cal. Jan. 3, 2011) (holding that, in the context of an injunction ordering the transfer of a domain name, "the Court is authorized to issue such an order against a third party because it is necessary to effectuate the purposes of the injunction"). Here, Defendant has not appeared in the suit, and it seems unlikely that Defendant will take affirmative steps to transfer the domain name as ordered. Accordingly, an order directing the third-party registrars and registries to effectuate the transfer is appropriate.

However, the Court will not grant Plaintiff's request to enter an order directing internet search engines, web hosts, online marketplaces, and registrars to "cease facilitating access to any and all websites and accounts through which Defendant engages in infringement of the AHNU Trademark." R. Doc. 14 at 4. Federal Rule of Civil Procedure 65(d) requires that orders granting injunctions "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Accordingly, "[i]njunctions must be narrowly tailored within the context of the substantive law at issue to address the specific relief sought." *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021).

The Court finds that Plaintiff's request is too broad. It is aimed at an enormous category of vaguely-categorized third parties such as "internet search engines" and "online marketplaces." Simply identifying those who must implement the order would be difficult. Further, Plaintiff requests

that these entities "cease facilitating access to any and all websites and accounts through which Defendant engages in infringement of the AHNU Trademark." It is unclear whose "access" Plaintiff wants these entities to "cease facilitating." Furthermore, Plaintiff has not identified any infringing "websites and accounts" besides the ahnu.com domain, which will be transferred to Plaintiff. The Court cannot simply order a broad category of third parties to restrict unknown parties' "access" to as-yet-unspecified "websites and accounts."

### iii. The Court Will Hold a Hearing to Determine the Correct Amount of Statutory Damages.

Plaintiff also requests either treble damages or statutory damages as to both its trademark infringement claim and its cyberpiracy claim. Courts usually award statutory damages rather than treble damages in the trademark infringement/default judgment context. *Viahart*, 2021 WL 777083, at *5 ("Statutory damages are particularly helpful in the default judgment context because counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible."). Plaintiff seeks statutory damages pursuant to two provisions. First, as to trademark infringement, 15 U.S.C. § 1117(c) provides that a plaintiff may recover statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale . . . as the court considers just." If the Court finds that the defendant's use of the mark was "willful," the maximum statutory damages amount goes up to $2,000,000. The statute further provides that "it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator . . . knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar." *Id.* § 1117(e). Second, as to cyberpiracy, 15 U.S.C. § 1117(d) provides for statutory damages "not less than $1,000 and not more than $100,000 per domain name, as the court considers just."

"The Court has wide discretion to determine a just amount for statutory damages for trademark infringement." *Viahart*, 2021 WL 777083, at *5. However, "[t]he Lanham Act does not provide the Court with guidance as to how to select an amount of damages from within the statutory range." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 695 (W.D. Tex. 2008). In the absence of such guidance, "many courts have looked to the following factors that are considered for the award of statutory damages under an analogous provision of the Copyright Act:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff[s]; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant."

*Gucci Am., Inc.*, 2011 WL 31191, at *15.

Here, Plaintiff has alleged that Defendant's conduct was "willful" within the meaning of the statute because it provided false contact information—the address of a parking lot in Brazil—when it registered the domain name. Accordingly, statutory damages for Plaintiff's trademark infringement claim have a range of $1,000 to $2,000,000. Statutory damages for Plaintiff's cyberpiracy claim have a range of $1,000 to $100,000. Although the Court recognizes that it has "wide discretion to determine a just amount" of statutory damages, the Court finds that it does not have sufficient information to determine the correct amount at this time. *Viahart*, 2021 WL 777083, at *5. Plaintiff has not provided the Court with information about the value of its trademark, an estimate of its lost profits, or citations to damage amounts in similar cases. The Court simply has no guidance on how to fashion a reasonable damage award within the large applicable range. Accordingly, the Court will set the issue of the amount of statutory damages for hearing. This hearing will be held on <u>Wednesday, January 22, 2025 at 9:00 am.</u> Plaintiff should be prepared to justify its damage request.

### iv. The Court Will Also Set the Amount and Entitlement to Attorney's Fees for Hearing.

Plaintiff also requests attorney's fees. R. Doc. 14-2 at 17. Under the Lanham Act, the Court has the discretion to award attorney's fees "in exceptional cases." 15 U.S.C. § 1117(a). An exceptional case is one in which the defendant's conduct is "malicious, fraudulent, or willful, and shows a high degree of culpability." *Martin's Herendi Imp. v. Diamond & Gem Trading USA*, 112 F.3d 1296, 1305 (5th Cir. 1997). Put another way, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an unreasonable manner." *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). The prevailing party bears the burden of proving the exceptional nature of the case by clear and convincing evidence. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 402 (5th Cir. 2008).

Here, the Court is not yet persuaded that Plaintiff has proven that this case is "exceptional." Although the Court takes Plaintiff's well-pleaded allegations regarding Defendant's bad faith as true for the purposes of determining liability, the Court must be more cautious when assigning damages. *See U.S. For Use of M-CO Const., Inc.*, 814 F.2d at 1014. Plaintiff offers no argument in its motion as to why the case is "exceptional." Further, the Court has read the arbitration opinion issued in this case, which raises some doubt as to Defendant's state of mind. *Deckers Outdoor Corporation v. Doman Manager*, No. D2024-1282 (World Intellectual Property Organization Arbitration and Mediation Center, June 24, 2024) (Nick Gardner). Although the arbitration opinion is not binding, the Court may consider its reasoning. *See Maruti.Com v. Maruti Udyog Ltd.*, 447 F. Supp. 2d 494, 502 (D. Md. 2006) (noting that "the WIPO's arbitration decision is persuasive"). Accordingly, the

15

Court will defer ruling on Plaintiff's entitlement to attorney's fees until after the hearing. Plaintiff may present its argument regarding attorney's fees at that time.

Further, Plaintiff has not requested a specific amount of attorney's fees, nor has it provided any bills or timesheets. At the hearing, Plaintiff may advise the Court of the amount of attorney's fees it requests and submit corresponding documentation, so that the Court can determine whether the fees requested are reasonable. *See & J Sports Prods., Inc. v. Palma*, No. 11-01776, 2012 WL 1853519, at *2 (N.D. Tex. May 21, 2012) (holding that the court "must determine whether the requested amount [of attorney's fees] is reasonable").

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion, R. Doc. 14 is **GRANTED**. The Court finds that Plaintiff is entitled to a default judgment on liability. The Court further finds that Plaintiff is entitled to the injunctive relief outlined above. The Court will set the amount of statutory damages and the amount and/or entitlement to attorney's fees for hearing on January 22, 2025 at 9:00 am.

New Orleans, Louisiana, this 17th day of December, 2024.

_____
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE